Daniel B. Heidtke (SBN 12975)
DUANE MORRIS LLP
100 N. City Parkway, Suite 1560
Las Vegas, NV  89106
Telephone: 702.868.2600
Facsimile:  702.868.2601
Email:  dbheidtke@duanemorris.com

*Attorneys for Defendant*
    Brown & Brown of Colorado, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JKG FITNESS, INC.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO EACH PARTY AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Brown & Brown of Colorado, Inc. ("Brown & Brown"), hereby removes this action from the Eighth Judicial District Court, Clark County, Nevada, to the United States District Court for the District of Nevada. In support of removal, Brown & Brown states as follows:

## INTRODUCTION

1.    On October 6, 2023, Plaintiff JKG Fitness, Inc., *et al* dba Planet Fitness ("Plaintiff") commenced this action in the District Court, Clark County, Nevada under the

DM1\14703961.4

caption, *JKG FITNESS, INC., et al. dba Planet Fitness, v. BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive*, Case No. A-23-879134-B (the "State Court Action"). True and correct copies of the Summons and Complaint filed in the State Court Action are attached hereto as **Exhibit A**.

## PROCEDURAL HISTORY, TIMELINESS OF REMOVAL AND VENUE

2.      Plaintiff served its complaint on Brown & Brown on October 13, 2023. (*See* Proof of Service, **Exhibit B**.)

3.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of service of the complaint on Brown & Brown.

4.      As required by 28 U.S.C. § 1446(a), Brown & Brown attaches a copy of all process, pleadings, orders and records served on Brown & Brown. (*See* **Exhibits A, B and C**.)

5.      Venue is proper for removal in this Court because the Eighth Judicial District Court, Clark County, is located in the District of Nevada.  28 U.S.C. § § 84(b) and 1441(A) (a state-filed action subject to federal jurisdiction may be removed "to the district court … for the district and division embracing the place where such action is pending.").

## BASIS FOR REMOVAL: DIVERSITY JURISDICTION

6.      As explained below, diversity jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332, as it is a civil action between citizens of different States and the amount in controversy exceeds $75,000, and removal is proper pursuant to 28 U.S.C. §§ 1441 & 1446.

7.      Plaintiff, as asserted in Paragraph 1 of the Complaint, "is, and was at all times relevant herein, a Nevada Corporation, having its principal place of business in Clark County, Nevada."

8.      Defendant Brown & Brown is a citizen of Colorado for purposes of Section 1332(c).  In particular, Brown & Brown is incorporated in Colorado with its principal place of

2

business in Denver, Colorado.  (Declaration of James Lanni, concurrently filed herewith, at ¶ 5.) While the Complaint also separately identifies Fitness Insurance, as correctly noted in the Complaint, Fitness Insurance is not a separate entity from Brown & Brown; it is simply a division of Brown & Brown.  (*Id.*, ¶ 5.)

9.    The citizenship of all aforementioned parties was and is as described above both at the time of filing the State Court Action and at the time of removal.

10.    While the complaint also purports to name as defendants "Does 1 through X," and "ROE CORPORATIONS I through X," the citizenship of such persons is ignored pursuant to 28 U.S.C. § 1441(b)(1).

11.    Accordingly, there is complete diversity of citizenship among the parties to this action.

12.    With respect to the amount in controversy, while Brown & Brown disputes any liability to Plaintiff, as per the express allegations of the Complaint, the amount in controversy exceeds $75,000. Specifically, Plaintiff alleges in its Complaint that due to Defendants purported wrongful acts, Plaintiff was underinsured in excess of "$2 million." (Exhibit A, ¶ 168.)

13.    This Notice of Removal complies with 28 U.S.C. §§ 1446(b)(2) & 1446(c)(2) because complete diversity exists between Plaintiff and Brown & Brown, the amount in controversy exceeds the minimum requirement for diversity jurisdiction, and no other parties have been named as defendants in this action.

14.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and in accordance with 28 U.S.C. § 1446. The statements and allegations contained herein are true and correct to the best of the knowledge and belief of the undersigned based upon a review of the materials available.

### <u>NOTICE TO STATE COURT AND TO PLAINTIFF</u>

15.    Contemporaneously with the filing of this Notice of Removal, and pursuant to 28 U.S.C. § 1446(d), written notice of this filing will be given by the undersigned to Plaintiff's

3

DM1\14703961.4

counsel of record, Jason R. Maier of Maier Gutierrez & Associates, and a copy of this Notice of Removal will be promptly filed with the Clerk of the Eighth Judicial District Court, County of Clark, be removed to and proceed in this Court.

WHEREFORE, Brown & Brown hereby removes this action to this Court respectfully requests that this Court assume jurisdiction of this matter and take all further steps as may be required to determine this controversy.

Dated: November 3, 2023

**DUANE MORRIS LLP**

By:   */s/ Daniel B. Heidtke*_____
Daniel B. Heidtke

Attorneys for Defendant

4

DM1\14703961.4

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2023, I served via CM/ECF and e-mailed and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **NOTICE OF REMOVAL** (postage prepaid if by U.S. Mail) and addressed to all parties and counsel as follows:

JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail: jrm@mgalaw.com
jph@mgalaw.com
mes@mgalaw.com
*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

*/s/ Daniel B. Heidtke*
Daniel B. Heidtke
An employee of DUANE MORRIS LLP

5

DM1\14703961.4

# EXHIBIT A

**Electronically Filed**
**10/6/2023 3:04 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

**COMP**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  (702) 629-7900
Facsimile:  (702) 629-7925
E-mail:    jrm@mgalaw.com
           jph@mgalaw.com
           mes@mgalaw.com

CASE NO.: A-23-879134-B
Department 22

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>    Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>    Defendants. | Case No.:<br>Dept. No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, JKG Fitness, Inc., *et al.* dba Planet Fitness ("JKG"), by and through their attorneys of record, the law firm MAIER GUTIERREZ & ASSOCIATES, demands a trial by jury, and complains and alleges against defendants Brown & Brown of Colorado, Inc. and Fitness Insurance, a Division of Brown & Brown of Colorado, Inc. (collectively, "Defendants"), as follows:

/ / /

/ / /

/ / /

1

**PARTIES**

1.      Plaintiff JKG Fitness, Inc. ("JKG") is, and was at all times relevant herein, a Nevada Corporation, having its principal place of business in Clark County, Nevada.

2.      Defendant Brown & Brown of Colorado, Inc., a Colorado Corporation, is, and was at all times relevant herein, a foreign Corporation doing business in Clark County, Nevada.

3.      Defendant Fitness Insurance, a Division of Brown & Brown of Colorado, Inc., is, and was at all times relevant herein, a foreign Corporation doing business in Clark County, Nevada.

**JURISDICTION AND VENUE**

4.      The acts and omissions sued upon herein occurred within Clark County, Nevada and Defendants have actively and regularly engaged in business within Clark County and have sought and enjoyed the benefits and protections of the laws of Clark County, such that the assertion of personal jurisdiction by this Court over it does not offend traditional notions of fairness and substantial justice.

5.      The claims at issue in this lawsuit arose in Clark County, Nevada.  Therefore, venue is appropriate in this Court within this District.

6.      The amount in controversy in this action exceeds the jurisdictional minimum of this Court, the full amount of which will be proven with certainty at the time of trial.

**GENERAL ALLEGATIONS**

7.      JKG owns and operates multiple Planet Fitness gym locations within the southwest region of the United States, including Nevada and California.  Planet Fitness gyms are fitness centers that house exercise equipment used by paying members to perform physical exercise.

8.      On or about May 30, 2014, White Lane Fitness, LLC, a subsidiary of JKG, leased a portion of commercial property located at 2300 White Lane, Bakersfield, California ("White Lane" or the "White Lane location") for the purpose of constructing a Planet Fitness gym.

9.      At the time the lease was first entered into, White Lane was in an unfinished state, with bare stud walls and uncompleted floors.

10.      Prior to opening the White Lane location in 2015, JKG completed extensive tenant improvements at White Lane, by, among other things, erecting walls, adding new flooring, fixtures,

equipment, and restrooms, and making improvements on the plumbing, electrical wiring, roofing, and heating.

11. Given the substantial expenditures associated with the construction at White Lane, JKG sought to protect its investment by procuring and maintaining commercial general liability insurance in the event of a total loss.

12. To that end, from 2015 on, JKG maintained commercial general liability insurance through various insurance carriers, procured by various insurance brokers.

13. Through each insurance broker JKG used, JKG specifically required them to procure an insurance policy that would fully cover tenant improvements, fixtures, and equipment at any one of JKG's individual locations, including White Lane.

14. For example, in 2018, Daniel Henry Co. ("DHC") procured an insurance policy for JKG that fully covered tenant improvements, fixtures, and equipment for White Lane (the "DHC Insurance Policy").

15. Specifically, the DHC Insurance Policy covered the physical building of White Lane and Business Personal Property ("BPP"), comprising of: (a) improvements and betterments; (b) back of sewers and drains; (c) signs; (d) stock; and (e) leased personal property.

16. The DHC Insurance Policy also provided $9,200,000 in coverage, shared amongst JKG's various locations, including White Lane, for the policy term of March 1, 2019 – 2020. The coverage amount was based on a replacement cost value and did not include "per occurrence" or "per location" limits on coverage.

17. In 2019, JKG retained the insurance brokerage Fitness Insurance, a division of Brown & Brown of Colorado, Inc., (collectively, "Defendants") to assist in procuring and renewing general liability, property, workers' compensation, and other insurance coverage for its locations.

18. With respect to property coverage, JKG explicitly specified to Defendants its need and desire to procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane, similar to the coverage the DHC Insurance Policy provided.

/ / /

/ / /

3

19.     Defendants then returned with an insurance policy proposed by Atlantic Specialty Insurance Company ("ASIC") that provided a $7,000,000 BPP coverage limit (the "2019-2020 Policy Limit") for JKG's locations, including White Lane (the "2019-2020 ASIC Insurance Policy").

20.     On or about February of 2019, JKG contacted Defendants to confirm whether the 2019-2020 ASIC Insurance Policy would cover everything in White Lane, including tenant improvements, fixtures, and equipment.

21.     Defendants confirmed that the 2019-2020 ASIC Insurance Policy would fully cover everything inside White Lane, including all contents and tenant improvements.

22.     Defendants also confirmed that in the event that JKG allocated a certain amount of the 2019-2020 Policy Limit to each of its fitness center locations, the 2019-2020 ASIC Insurance Policy allowed JKG to use the full $7,000,000 to cover one location.

23.     Finally, Defendants confirmed that the 2019-2020 Policy Limit was a blanket aggregate limit, meaning that the $7,000,000 applied to all of JKG's locations.

24.     Based on Defendants' representations of the 2019-2020 ASIC Insurance Policy's coverage limits, JKG understood it had an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

25.     Defendants, thereafter, continued to assist JKG with its commercial general liability insurance policy renewals, working under the assumption that Defendants would continue to procure insurance policies that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

26.     On or about March of 2020, Defendants sent JKG an insurance policy proposal for its locations, including White Lane, in preparation for obtaining insurance coverage for the March 1, 2020 – 2021 policy term.

27.     Part of that proposal included an insurance policy proposed by ASIC that provided a $10,130,000 BPP coverage limit for JKG's locations, including White Lane (the "2020-2021 ASIC Insurance Policy").

28.     The proposal declared that the 2020-2021 ASIC Insurance Policy provided a blanket BPP limit that covered all of JKG's locations, including White Lane.

4

29. Significantly, the liability proposal for White Lane, which was included on the same page as the proposal, distinguished between "per occurrence" and "general aggregate" limits for liability claims. However, no limit distinction was indicated for BPP claims.

30. On or about March of 2021, in preparation for obtaining coverage for the March 2021 – 2022 policy term, Defendants informed JKG that ASIC would not provide a renewal quote for JKG, as it would no longer work within the health club industry.

31. Defendants, thus, entered the marketplace to procure commercial general liability and property insurance through a new insurance carrier.

32. Based on JKG's previously expressed requirement, and Defendants' acknowledgement of that requirement, that Defendants procure an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations, JKG was under the assumption that Defendants would procure such an insurance policy.

33. On or about March 19, 2021, Defendants sent JKG insurance policy proposals for its locations, including White Lane, in preparation for obtaining insurance coverage for the March 2021 – 2022 policy term.

34. As part of that correspondence, Defendants expressly confirmed to JKG that they were in the process of reviewing said proposals, including the general liability and property insurance proposals, to ensure the coverage complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations.

35. In addition, and as part of the March 19, 2021 correspondence, Defendants included a spreadsheet comparing coverage between multiple insurance carriers.

36. Defendants represented in that spreadsheet that the property insurance policies being compared provided blanket coverage for all JKG locations.

37. Significantly, the policy proposal spreadsheet did not include the phrases "per occurrence" nor "per location."

///

5

38. On or about March of 2021, Defendants returned with an insurance policy proposed by Vantapro Specialty Insurance Company ("Vantapro") that provided an $11,930,000 BPP coverage limit (the "2021-2022 Policy Limit") for JKG's locations, including White Lane (the "2021-2022 Vantapro Insurance Policy").

39. Based on Defendants' representation that they would ensure the insurance policies in their proposals for the March 2021 – 2022 policy term complied with JKG's previously expressed needs; JKG believed that the 2021-2022 Vantapro Insurance Policy would fully cover a total loss at any one of JKG's individual locations, including White Lane.

40. However, unbeknownst to JKG, and in direct contravention to JKG's previous instructions, the 2021-2022 Vantapro Insurance Policy that Defendants procured did not fully cover a total loss at any one of JKG's individual locations, but instead provided "per occurrence, per location" limits well below the value of the White Lane tenant improvements, fixtures, equipment, and overall risk exposure.

41. Nevertheless, based on Defendants' representations that it would ensure the insurance policies it proposed complied with JKG's needs, JKG entered into the 2021-2022 Vantapro Insurance Policy.

42. On or about September 9, 2022, JKG suffered a total loss to its White Lane location due to a fire that started in an adjacent unit that burned through multiple tenant locations in the building where White Lane is located and severely damaged the White Lane Location.

43. As a result of the fire, White Lane suffered fire, smoke, and water damage.

44. In addition to this damage to White Lane, JKG's Planet Fitness gym equipment left unsecured and promptly stolen.

45. As a result of the damage to White Lane, as well as the stolen gym equipment, White Lane's loss totaled over $3 million. This figure is based upon similar tenant improvements JKG made at a comparable location.

46. Because of this loss, JKG submitted a claim to Vantapro based upon its belief that the 2021-2022 Vantapro Insurance Policy provided a blanket aggregate limit that would cover the total loss at White Lane.

6

47. On or about October of 2022, Vantapro denied JKG's full coverage claim, stating that the 2021-2022 Vantapro Insurance Policy would only cover the "per occurrence, per location" limit for White Lane of $850,000, woefully below White Lane's total loss.

48. Vantapro explained that the 2021-2022 Policy Limit was not a blanket aggregate limit, but instead provided individual limits per location.

49. JKG informed Defendants that not only did they grossly misrepresent the coverage limit under the 2021-2022 Vantapro Insurance Policy, but also procured an insurance policy in direct contravention to what JKG and Defendants agreed Defendants would procure.

50. The 2021-2022 Vantapro Insurance Policy failed to provide the coverage that Defendants had a duty and obligation to procure for JKG.

51. After JKG informed Defendants of their gross misrepresentation, Defendants changed their description of the 2021-2022 Policy Limit to acknowledge the accurate individual limits under the 2021-2022 Vantapro Insurance Policy.

52. As a result of Defendants' misrepresentations, Defendants left JKG grossly underinsured.

53. Had Defendants procured insurance coverage that fully covered a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations, including White Lane, JKG's loss at White Lane would have been fully covered.

54. Moreover, as a result of the Defendants' failure to obtain sufficient coverage, JKG was unknowingly underinsured and suffered significant damages, not including attorneys' fees and costs.

### FIRST CLAIM FOR RELIEF

**(Negligent Failure to Procure Insurance – All Defendants)**

55. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

56. Defendants owed a duty to JKG to procure insurance coverage that would fully cover a total loss at any one of JKG's individual locations after Defendants represented they would ensure the insurance policies they proposed, including the 2021-2022 Vantapro Insurance Policy, would comply with JKG's previously expressed needs.

57. In 2019, JKG requested Defendants to procure insurance coverage that would fully cover a total loss at any one of JKG's individual locations, including White Lane, and Defendants promised to obtain that insurance for JKG.

58. When JKG's previous carrier, ASIC, declined to renew its property policy, Defendants procured the 2021-2022 Vantapro Insurance Policy.

59. As part of proposing insurance policies for JKG's locations, including White Lane, for the March 2021 – 2022 policy term, Defendants expressly confirmed to JKG that they would ensure the coverage complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations.

60. Defendants breached their duty to JKG when they procured an insurance policy that did not fully cover a total loss at any one of JKG's individual locations.

61. Instead of fully covering a total loss at any one of JKG's individual locations, the 2021-2022 Vantapro Insurance Policy provided "per occurrence, per location" limits well below the value of the White Lane tenant improvements, fixtures, equipment, and overall risk exposure.

62. Defendants failed to seasonably notify JKG about this material change in coverage or the implications of the 2021-2022 Vantapro Insurance Policy's individual "per occurrence, per location" limits, resulting in JKG being grossly underinsured.

63. As a result of Defendants' negligence, JKG was harmed.

64. On or about September 9, 2022, White Lane suffered a total loss due to severe fire, smoke, and water damage to White Lane, as well as loss of business property.

65. Because Defendants were negligent in failing to procure the promised insurance coverage, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

66. Defendants' breach of duty to procure insurance was the cause and proximate cause of JKG's harm.

/ / /

67. Had Defendants procured insurance coverage that fully covered a total loss at any one of JKG's individual locations, JKG's loss at White Lane would have been fully covered.

68. By virtue of Defendants' unjustified negligent failure to procure insurance, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

## SECOND CLAIM FOR REFLIEF

### (Negligent Misrepresentation – All Defendants)

69. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

70. Defendants made a representation to JKG that they procured an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

71. As part of proposing insurance policies for JKG's locations, including White Lane, for the March 2021 – 2022 policy term, Defendants expressly confirmed to JKG that they would ensure the coverage complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations.

72. Defendants made this representation while in the course of their business of assisting JKG to procure adequate coverage for its locations, including White Lane.

73. Based on Defendants' representation that they would ensure the insurance policies they proposed for the March 2021 – 2022 policy term complied with JKG's previously expressed needs; JKG was under the assumption that the 2021-2022 Vantapro Insurance Policy would fully cover a total loss at any one of JKG's individual locations, including White Lane.

74. Defendants failed to exercise reasonable care or competence in obtaining or communicating the representation to JKG because despite stating that Defendants would ensure the insurance policies they proposed for the March 2021 – 2022 policy term complied with JKG's previously expressed needs, the 2021-2022 Vantapro Insurance Policy did not.

/ / /

/ / /

9

75. Instead of fully covering a total loss at any one of JKG's individual locations, the 2021-2022 Vantapro Insurance Policy provided "per occurrence, per location" limits well below the value of the White Lane tenant improvements, fixtures, equipment, and overall risk exposure.

76. Defendants' representation to JKG that the 2021-2022 Vantapro Insurance Policy would fully cover a total loss at any one of JKG's individual locations, including White Lane, was false.

77. The representation was supplied for the purpose of guiding JKG in its business transactions.

78. JKG justifiably relied on Defendants to procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations based on Defendants' representation that they would ensure the insurance policies they proposed for the March 2021 – 2022 policy term complied with JKG's previously expressed needs.

79. As a result of that justifiable reliance, JKG entered into the 2021-2022 Vantapro Insurance Policy, leaving it grossly underinsured.

80. Because of Defendants' negligent misrepresentation that the 2021-2022 Vantapro Insurance Policy would fully cover a total loss at any one of JKG's individual locations, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

81. By virtue of the Defendants' unjustified negligent misrepresentations, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

## THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – All Defendants)

82. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

83. Defendants made a false representation when they informed JKG that the 2021-2022 Vantapro Insurance Policy complied with JKG's previously expressed needs of having an insurance

policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

84. On or about March 19, 2021, Defendants sent JKG insurance policy proposals for its locations, including White Lane, in preparation for obtaining insurance coverage for the March 2021 – 2022 policy term.

85. As part of that correspondence, Defendants expressly confirmed to JKG that they were in the process of reviewing said proposals, including the general liability and property insurance proposals, to ensure the coverage complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations.

86. In addition, and as part of the March 19, 2021 correspondence, Defendants included a spreadsheet comparing coverage between multiple insurance carriers.

87. Defendants represented in that spreadsheet that the property insurance policies being compared provided blanket coverage for all JKG locations.

88. Significantly, the policy proposal spreadsheet did not include the phrases "per occurrence" nor "per location.

89. However, the 2021-2022 Vantapro Insurance Policy did not fully cover a total loss at any one of JKG's individual locations, but instead provided "per occurrence, per location" limits well below the value of the White Lane tenant improvements, fixtures, equipment, and overall risk exposure.

90. Defendants knew or believed that their representation was false or lacked sufficient information for making the representation.

91. Defendants expressly confirmed to JKG that they were in the process of reviewing the insurance policies they proposed, including the general liability and property insurance proposals, to ensure the coverage complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual location.

/ / /

/ / /

11

92. In confirming that they would ensure the insurance policies they proposed complied with JKG's previously expressed needs; Defendants knew the terms of the 2021-2022 Vantapro Insurance Policy.

93. As such, Defendants knew that their representation that the 2021-2022 Vantapro Insurance Policy complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

94. Defendants intended to induce JKG to act upon their misrepresentation because they knew that JKG retained Defendants to procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations and relied on Defendants' representations regarding the same.

95. Defendants had known for years that JKG retained their services to procure insurance coverage that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations.

96. For instance, when Defendants returned with the 2019-2020 ASIC Insurance Policy, JKG inquired to Defendants whether the 2019-2020 ASIC Insurance Policy would fully cover a total loss at any one of JKG's individual locations, including White Lane, which Defendants confirmed affirmatively.

97. In addition, Defendants procured the 2020-2021 ASIC Insurance Policy that fully covered a total loss at any one of JKG's individual locations.

98. Thus, based on JKG's expressed requirement that it wanted to have insurance coverage that would fully cover a total loss at any one of its individual locations, Defendants knew they were retained to provide such coverage.

99. JKG detrimentally relied on Defendants' misrepresentation and entered into the 2021-2022 Vantapro Insurance Policy, leaving it grossly underinsured.

100. Based on Defendants' history of successfully procuring insurance policies that fully covered a total loss at any one of JKG's individual locations, JKG was inclined to believe that Defendants' representation that that the 2021-2022 Vantapro Insurance Policy would provide the coverage JKG required was accurate.

/ / /

101.    As a result of the Defendants' fraudulent misrepresentations, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

102.    By virtue of the Defendants' unjustified fraudulent misrepresentation, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – All Defendants)

103.    JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

104.    Defendants engaged in a fiduciary relationship with JKG.

105.    JKG, as the reliant party, had a right to reasonably trust or have confidence in the integrity and fidelity of Defendants.

106.    On multiple occasions, JKG requested Defendants to procure insurance coverage that would fully cover a total loss at any one of JKG's individual locations, including White Lane, and Defendants promised to obtain that insurance coverage for JKG.

107.    JKG did, in fact, reasonably trust or have confidence in the integrity and fidelity of Defendants.

108.    Based on Defendants' history of successfully procuring insurance policies that fully covered a total loss at any one of JKG's individual locations, JKG reasonably trusted or had confidence that Defendants would procure insurance policies with such coverage, including the 2021-2022 Vantapro Insurance Policy.

109.    Defendants were in a position to have and exercise influence over JKG.

110.    Based on Defendants' previous acknowledgments that they would procure insurance policies that would fully covered a total loss at any one of JKG's individual locations, JKG believed Defendants would procure such an insurance policy in the 2021-2022 Vantapro Insurance Policy.

111.    Defendants did, in fact, exercise influence over JKG.

/ / /

13

112. Based on Defendants' representation that they would ensure the insurance policies in their proposals for the March 2021 – 2022 policy term, including the general liability and property insurance policies, complied with JKG's previously expressed needs, JKG entered into the 2021-2022 Vantapro Insurance Policy.

113. Defendants breached their fiduciary duty when they procured the 2021-2022 Vantapro Insurance Policy that did not fully cover a total loss at any one of JKG's individual locations, including White Lane.

114. Given that a fiduciary relationship existed, Defendants had a duty to exercise care, loyalty, confidentiality, full disclosure, fairness, and good faith in procuring an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

115. In retaining Defendants to assist in procuring insurance coverage, JKG explicitly required an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane, and Defendants promised that it would ensure that the insurance policies it proposed, including the 2021-2022 Vantapro Insurance Policy, would comply with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss, including tenant improvements, fixtures, and equipment, at any one of JKG's individual locations.

116. Defendants violated that duty by procuring the 2021-2022 Vantapro Insurance Policy that did not fully cover a total loss at any one of JKG's individual locations.

117. JKG detrimentally relied on Defendants' misrepresentation and entered into the 2021-2022 Vantapro Insurance Policy, leaving it grossly underinsured.

118. As a result of the Defendants' breach of their fiduciary duty, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

119. Defendants' breach of its fiduciary duty was the direct and proximate cause of JKG's damages.

120. But for Defendants' breach of their fiduciary duty, JKG would not have been grossly underinsured when a fire caused damages to White Lane.

/ / /

14

121. Put differently, had Defendants procured insurance coverage that fully covered a total loss at any one of JKG's individual locations; JKG's loss at White Lane would have been fully covered.

122. As a result of the Defendants' unjustified breach, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

123. By virtue of the Defendants unjustified breach of its fiduciary duty, JKG has been compelled to retain the services of to prosecute this Complain and obtain a judgment to recover its damages.

**FIFTH CLAIM FOR RELIEF**

**(Professional Negligence – All Defendants)**

124. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

125. Defendants had a duty to use such skill, prudence, and diligence as other insurance brokers commonly possess and exercise when such insurance brokers assume the duty of procuring insurance coverage that complies with the requirements of its agent's expressed needs.

126. On multiple occasions, JKG requested that Defendants procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane, and Defendants promised to obtain that insurance for JKG, thereby assuming the duty of procuring an insurance policy with such coverage.

127. Defendants breached their duty to JKG when they procured the 2021-2022 Vantapro Insurance Policy that did not fully cover a total loss at any one of JKG's individual locations.

128. As a result of the Defendants' breach of their duty, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

129. Defendants' breach of their duty was the direct and proximate cause of JKG's damages.

130. But for Defendants' breach of their fiduciary duty, JKG would not have been grossly underinsured when a fire caused damages to White Lane.

15

131. Actual loss or damage resulted from Defendants' professional negligence.

132. Due to Defendants' professional negligence, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

133. By virtue of the Defendants unjustified professional negligence, JKG has been compelled to retain the services of to prosecute this Complaint and obtain a judgment to recover its damages.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract – All Defendants)

134. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

135. The parties entered into an express or implied contract when JKG retained Defendants' services to procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane, in exchange for payment from JKG.

136. Part of the terms of the contract required Defendants to procure insurance policies that would fully cover a total loss at any one of JKG's individual locations.

137. JKG performed its contractual obligations by paying Defendants for their services.

138. Defendants, however, breached the contract when they procured the 2021-2022 Vantapro Insurance Policy that did not fully cover a total loss at any one of JKG's individual locations.

139. At no point did JKG inform Defendants that it wanted a different amount of coverage it had previously received.

140. Defendants expressly confirmed to JKG that they would ensure that the insurance policies they proposed for the March 2021 – 2022 policy term, including the 2021-2022 Vantapro Insurance Policy, complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

141. Defendants' breach of contract caused JKG damages.

142. But for Defendants' breach of their duty, JKG would not have been grossly underinsured when it suffered damages in the form of underinsured losses when JKG suffered a total

16

loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit.

143.   JKG could not foresee Defendants' failure to procure an insurance policy fully cover a total loss at any one of JKG's individual locations or the damages to JKG that ensued.

144.   Had Defendants performed their contractual obligations, JKG's White Lane location would have had sufficient coverage when it was declared a total loss due to a fire at White Lane.

145.   By virtue of the Defendants' unjustified breach of contract, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

## SEVENTH CLAIM FOR RELIEF

**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing – All Defendants)**

146.   JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

147.   JKG and the Defendants entered into a valid contract when JKG retained Defendants' services to procure insurance coverage that would fully cover a total loss at any one of JKG's individual locations, including White Lane, and JKG paid Defendants for their services.

148.   JKG performed its contractual obligations by paying Defendants for their services.

149.   Defendants, however, performed in a manner that was unfaithful to the purpose of the contract, or deliberately contravened the intention and sprit of the contract when they misrepresented to JKG that they would ensure that the insurance policies they proposed for the March 2021 – 2022 policy term, including the 2021-2022 Vantapro Insurance Policy, complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

150.   Defendants knew that JKG wanted to have insurance coverage that would fully cover a total loss at any one of JKG's individual locations, but failed to advise JKG of the material changes in coverage of the 2021-2022 Vantapro Insurance Policy or the implications of switching to the 2021-2022 Vantapro Insurance Policy's individual "per occurrence, per location" limits, resulting in JKG being grossly underinsured.

17

151. JKG trusted and relied on the Defendants' misrepresentation that that they would ensure that the insurance policies they proposed for the March 2021 – 2022 policy term, including the 2021-2022 Vantapro Insurance Policy, complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

152. Defendants' misrepresentation that that they would ensure that the insurance policies they proposed for the March 2021 – 2022 policy term, including the 2021-2022 Vantapro Insurance Policy, complied with JKG's previously expressed needs of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations was a substantial factor in causing damage to JKG.

153. Due to Defendants' breach of the implied covenant of good faith and fair dealing, when JKG suffered a total loss at its White Lane location that was only insured up to the $850,000 "per occurrence, per location" limit, JKG suffered damages in the form of underinsured losses.

154. Had Defendants performed their contractual obligations, JKG's White Lane location would have had sufficient coverage when it was declared a total loss due to the fire, as well as loss of business property.

155. By virtue of the Defendants unjustified contractual breach of the implied covenant of good faith and fair dealing, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment – All Defendants)

156. JKG repeats, re-alleges, and incorporates herein by reference, each of the allegations contained in the preceding paragraphs as though fully set forth herein.

157. JKG conferred a benefit on Defendants in the form of payment for Defendants' insurance coverage procurement services.

158. The parties understood that in exchange for this benefit, Defendants would procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

18

159. Defendants appreciated such benefit by receiving JKG's tender of payment in exchange for Defendants procuring insurance policies that would fully cover a total loss at any one of JKG's individual locations, including White Lane.

160. Defendants accepted and retained such benefit under such circumstances that it would be inequitable for them to retain the benefit without exchanging services equal to the value thereof.

161. Based on JKG's previously expressed requirement, and Defendants' acknowledgement of its requirement, that Defendants procure an insurance policy that would fully cover a total loss at any one of JKG's individual locations, including White Lane, Defendants knew JKG wanted them to procure such an insurance policy.

162. When JKG's previous carrier, ASIC, declined to renew its property policy, Defendants procured the 2021-2022 Vantapro Insurance Policy.

163. However, instead of fully covering a total loss at any one of JKG's individual locations, the 2021-2022 Vantapro Insurance Policy provided "per occurrence, per location" limits well below the value of the White Lane tenant improvements, fixtures, equipment, and overall risk exposure.

164. Despite knowing JKG's need of having an insurance policy that would fully cover a total loss at any one of JKG's individual locations, Defendants failed to advise JKG of the material changes in coverage of the 2021-2022 Vantapro Insurance Policy or the implications of switching to the 2021-2022 Vantapro Insurance Policy's individual "per occurrence, per location" limits.

165. As a result of Defendants' failure to procure an insurance policy it knew JKG required, and its failure to advise JKG of the material changes in the 2021-2022 Vantapro Insurance Policy, Defendants left JKG grossly underinsured.

166. Following a fire at its White Lane location that caused severe fire, smoke, and water damage to White Lane, as well as loss of business property, JKG suffered an excess of $3 million in damages.

167. Being that the 2021-2022 Vantapro Insurance Policy provided "per occurrence, per location" limits instead of providing coverage that fully covered a total loss at any one of JKG's individual locations, including White Lane, the 2021-2022 Vantapro Insurance Policy only covered $850,000 in damages, woefully below White Lane's total loss.

168.    The difference between JKG's total loss at its White Loss location and the policy limit Vantapro expressed the 2021-2022 Vantapro Insurance Policy provided exceeds $2 million.

169.    It is inequitable for Defendants to retain the benefit JKG conferred without exchanging services equal to the value thereof.

170.    By virtue of the Defendants unjust enrichment, JKG has been compelled to retain the services of counsel to prosecute this Complaint and obtain a judgment to recover its damages.

### PRAYER FOR RELIEF

WHEREFORE, JKG Fitness, Inc., expressly reserves the right to amend this complaint prior to or at the time of trial of this action, to insert those claims and items of damage not yet full ascertainable, and prays judgment against the Defendants, and each of them as follows:

1.    For consequential damages sustained by Plaintiff in an amount in excess of $15,000;

2.    For general damages sustained by Plaintiff in an amount in excess of $15,000;

3.    For special damages sustained by Plaintiff in an amount in excess of $15,000;

4.    For an award of reasonable attorneys' fees and costs of suit;

5.    For interest at the statutory rate; and

6.    For such other and further relief as the Court may deem proper.

DATED this 6th day of October, 2023.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

_/s/ Jean Paul Hendricks_____
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

# EXHIBIT B

Electronically Filed
10/25/2023 5:36 PM
Steven D. Grierson
CLERK OF THE COURT

**SUMM**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  (702) 629-7900
Facsimile:  (702) 629-7925
E-mail:      jrm@mgalaw.com
                jph@mgalaw.com
                mes@mgalaw.com

CASE NO.: A-23-879134-B

Department 22

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

|  |  |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>                    Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>                    Defendants. | Case No.:<br>Dept. No.:<br><br>**SUMMONS - CIVIL** |

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 21 DAYS.  READ THE INFORMATION BELOW.**

**FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC.**

A civil complaint has been filed by the plaintiff against you for the relief set forth in the complaint.

1.      If you intend to defend this lawsuit, within 21 days after this summons is served on you, exclusive of the day of service, you must do the following:

1

(a)     File with the Clerk of the Court, whose address is shown below, a formal written response to the complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b)     Serve a copy of your response upon the attorney whose name and address is shown below.

2.     Unless you respond, your default will be entered upon application of the plaintiff and failure to so respond will result in a judgment of default against you for the relief demanded in the complaint, which could result in the taking of money or property or other relief requested in the complaint.

3.     If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.     The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this summons within which to file and answer or other responsive pleading to the complaint.

STEVEN D. GRIERSON
CLERK OF THE COURT

_____
Deputy Clerk                                      Date  10/10/2023
Regional Justice Court
200 Lewis Avenue
Las Vegas, Nevada 89155

Michelle McCarthy

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**


__/s/ Jean Paul Hendricks_____
JASON R. MAIER, ESQ., NV Bar No. 8557
JEAN PAUL HENDRICKS, ESQ., NV Bar No. 10079
MARGARET E. SCHMIDT, ESQ., NV Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al.
dba Planet Fitness*

2

MAIER GUTIERREZ & ASSOCIATES
8816 SPANISH RIDGE AVENUE
LAS VEGAS, NV 89148
(702) 629-7900



**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

JKG FITNESS, INC., ET AL.
    Plaintiff

vs

BROWN & BROWN OF COLORADO, INC., ET AL.
    Defendant

*Case Number:* A-23-879134-B

*Dept:*

**AFFIDAVIT OF SERVICE**

ANDREW SCOTT , deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age and not a party to nor interested in the proceeding in which this statement is made.

Affiant received a copy of the:
**SUMMONS; COMPLAINT; CIVIL COVER SHEET; INITIAL APPEARANCE FEE DISCLOSURE**

I served the same on **10/17/2023** at **10:26 AM** to:

**Defendant FITNESS INSURANCE, A DIVISION OF BROWN & BROWN OF COLORADO INC., A COLORADO CORPORATION, BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT**

by leaving the copies with or in the presence of **COLE STENDER, CLERK**, at **1900 W LITTLETON BLVD, LITTLETON, CO 80120**.

Service was made outside the state of Nevada not subject to NRS 14.025.

·SIGNED AND SWORN TO
IN EL PASO COUNTY, CO
Subscribed and Sworn to Before Me on This
Wednesday, October 18, 2023 by the Affiant.

_____
Notary Public

| SHANNON MARIE PARKHILL |
| NOTARY PUBLIC · STATE OF COLORADO |
| Notary ID #20194027245 |
| My Commission Expires 9/14/2027 |

_____
ANDREW SCOTT
Trailfinder Inc
7600 E Arapahoe Rd
Centennial, CO 80112
303-495-3379

P-1994098.01 Client File # 203356

Electronically Issued
10/6/2023 3:35 PM

Electronically Filed
10/25/2023 1:57 PM
Steven D. Grierson
CLERK OF THE COURT

**SUMM**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  (702) 629-7900
Facsimile:   (702) 629-7925
E-mail:       jrm@mgalaw.com
                   jph@mgalaw.com
                   mes@mgalaw.com

CASE NO.: A-23-879134-B

Department 22

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**SUMMONS - CIVIL** |

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 21 DAYS.  READ THE INFORMATION BELOW.**

**BROWN & BROWN OF COLORADO, INC.**

A civil complaint has been filed by the plaintiff against you for the relief set forth in the complaint.

1.      If you intend to defend this lawsuit, within 21 days after this summons is served on you, exclusive of the day of service, you must do the following:

1

(a)    File with the Clerk of the Court, whose address is shown below, a formal written response to the complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b)    Serve a copy of your response upon the attorney whose name and address is shown below.

2.    Unless you respond, your default will be entered upon application of the plaintiff and failure to so respond will result in a judgment of default against you for the relief demanded in the complaint, which could result in the taking of money or property or other relief requested in the complaint.

3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this summons within which to file and answer or other responsive pleading to the complaint.

STEVEN D. GRIERSON
CLERK OF THE COURT

_____
Deputy Clerk                                    Date  10/10/2023
Regional Justice Court
200 Lewis Avenue
Las Vegas, Nevada 89155
Michelle McCarthy

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

__/s/ Jean Paul Hendricks_____
JASON R. MAIER, ESQ., NV Bar No. 8557
JEAN PAUL HENDRICKS, ESQ., NV Bar No. 10079
MARGARET E. SCHMIDT, ESQ., NV Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al.*
*dba Planet Fitness*

2

MAIER GUTIERREZ & ASSOCIATES
8816 SPANISH RIDGE AVENUE
LAS VEGAS, NV 89148
(702) 629-7900



DISTRICT COURT
CLARK COUNTY, NEVADA

JKG FITNESS, INC., ET AL.
   Plaintiff

vs

BROWN & BROWN OF COLORADO, INC., ET AL.
   Defendant

*Case Number:* A-23-879134-B

*Dept:*

**AFFIDAVIT OF SERVICE**

ANDREW SCOTT , deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age and not a party to nor interested in the proceeding in which this statement is made.

Affiant received a copy of the:
**SUMMONS; COMPLAINT; CIVIL COVER SHEET; INITIAL APPEARANCE FEE DISCLOSURE**

I served the same on **10/17/2023** at **10:26 AM** to:

**Defendant FITNESS INSURANCE, A DIVISION OF BROWN & BROWN OF COLORADO INC., A COLORADO CORPORATION, BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT**

by leaving the copies with or in the presence of **COLE STENDER, CLERK**, at **1900 W LITTLETON BLVD, LITTLETON, CO 80120**.

Service was made outside the state of Nevada not subject to NRS 14.025.

**SIGNED AND SWORN TO
IN EL PASO COUNTY, CO**
Subscribed and Sworn to Before Me on This
Wednesday, October 18, 2023 by the Affiant.

_____
Notary Public

SHANNON MARIE PARKHILL
NOTARY PUBLIC - STATE OF COLORADO
Notary ID #20194027245
My Commission Expires 9/14/2027

_____
ANDREW SCOTT
Trailfinder Inc
7600 E Arapahoe Rd
Centennial, CO 80112
303-495-3379

P-1994098.01 Client File # 203356

Electronically Issued
10/6/2023 3:05 PM

Electronically Filed
10/25/2023 5:36 PM
Steven D. Grierson
CLERK OF THE COURT

**SUMM**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail:    jrm@mgalaw.com
           jph@mgalaw.com
           mes@mgalaw.com

CASE NO: A-23-879134-B

Department 22

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**SUMMONS - CIVIL** |

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 21 DAYS.  READ THE INFORMATION BELOW.**

**BROWN & BROWN OF COLORADO, INC.**

A civil complaint has been filed by the plaintiff against you for the relief set forth in the complaint.

1.     If you intend to defend this lawsuit, within 21 days after this summons is served on you, exclusive of the day of service, you must do the following:

1

(a)     File with the Clerk of the Court, whose address is shown below, a formal written response to the complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b)     Serve a copy of your response upon the attorney whose name and address is shown below.

2.     Unless you respond, your default will be entered upon application of the plaintiff and failure to so respond will result in a judgment of default against you for the relief demanded in the complaint, which could result in the taking of money or property or other relief requested in the complaint.

3.     If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.     The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this summons within which to file and answer or other responsive pleading to the complaint.

STEVEN D. GRIERSON
CLERK OF THE COURT

_____
Deputy Clerk                         Date  10/10/2023
Regional Justice Court
200 Lewis Avenue
Las Vegas, Nevada 89155

Michelle McCarthy

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

__/s/ Jean Paul Hendricks_____
JASON R. MAIER, ESQ., NV Bar No. 8557
JEAN PAUL HENDRICKS, ESQ., NV Bar No. 10079
MARGARET E. SCHMIDT, ESQ., NV Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al.*
*dba Planet Fitness*

2

MAIER GUTIERREZ & ASSOCIATES
8816 SPANISH RIDGE AVENUE
LAS VEGAS, NV 89148
(702) 629-7900



DISTRICT COURT
CLARK COUNTY, NEVADA

JKG FITNESS, INC., ET AL.
          Plaintiff

vs

BROWN & BROWN OF COLORADO, INC., ET AL.
          Defendant

Case Number: A-23-879134-B

Dept:

PROOF OF SERVICE

KYLE THOMAS, deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age and not a party to nor interested in the proceeding in which this statement is made.

Affiant received a copy of the:
**SUMMONS; COMPLAINT; CIVIL COVER SHEET; INITIAL APPEARANCE FEE DISCLOSURE**

I served the same on **10/13/2023 at 2:44 PM** to:

Defendant **BROWN & BROWN OF COLORADO, INC., A COLORADO CORPORATION, BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT**

by leaving the copies with or in the presence of **KRIS KENISSON, CORPORATE SPECIALIST**, at 112 N CURRY ST, CARSON CITY, NV 89703, pursuant to **NRS 14.020**.

Service was made outside the state of Nevada not subject to NRS 14.025.

Pursuant to NRS 53.045, I declare under penalty of perjury under the law of the State of Nevada that the forgoing is true and correct.

Executed: Wednesday, October 18, 2023

_____
KYLE THOMAS, R-2019-08090
Battle Born Process Service, NV PILB LIC #1876
3710 Grant Drive, Ste. L
Reno, NV 89509
775-507-7188

P-1994099.01 Client File # 203356

# EXHIBIT C

Electronically Filed
10/6/2023 3:04 PM
Steven D. Grierson
CLERK OF THE COURT

**IAFD**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  (702) 629-7900
Facsimile:   (702) 629-7925
E-mail:      jrm@mgalaw.com
             jph@mgalaw.com
             mes@mgalaw.com

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

CASE NO: A-23-879134-B

Department 22

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)** |

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above-entitled action as indicated below:

/ / /

/ / /

/ / /

/ / /

/ / /

1

| JKG FITNESS, INC., *et al.* dba Planet Fitness | $1,530.00 |
| **TOTAL:** | $1,530.00 |

DATED this 6th day of October, 2023.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

_/s/ Jean Paul Hendricks_____
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

2

**Electronically Filed**
**10/6/2023 3:04 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

**IAFD**
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile:  (702) 629-7925
E-mail:     jrm@mgalaw.com
            jph@mgalaw.com
            mes@mgalaw.com

CASE NO: A-23-879134-B

Department 22

*Attorneys for Plaintiff JKG Fitness, Inc., et al. dba Planet Fitness*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| JKG FITNESS, INC., *et al.* dba Planet Fitness,<br><br>Plaintiffs,<br><br>vs.<br><br>BROWN & BROWN OF COLORADO, INC., a Colorado Corporation; FITNESS INSURANCE, a division of BROWN & BROWN OF COLORADO INC., a Colorado Corporation DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)** |

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above-entitled action as indicated below:

/ / /

/ / /

/ / /

/ / /

/ / /

1

JKG FITNESS, INC., *et al.* dba Planet Fitness                    $1,530.00

**TOTAL:**                                                                          $1,530.00

DATED this 6th day of October, 2023.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

 */s/ Jean Paul Hendricks*_____
JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JEAN PAUL HENDRICKS, ESQ.
Nevada Bar No. 10079
MARGARET E. SCHMIDT, ESQ.
Nevada Bar No. 12489
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff JKG Fitness, Inc., et al.*
*dba Planet Fitness*